**Marquis Aurbach Coffing**
JAY YOUNG, ESQ.
Nevada Bar No. 5562
NICK D. CROSBY, ESQ.
Nevada Bar No. 8996
BRIAN BLANKENSHIP, ESQ.
Nevada Bar No. 11522
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
jay@maclaw.com
ncrosby@maclaw.com
bblankenship@maclaw.com
   Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JULIENNE DOW, an individual; CAROL GERENSTEIN, an individual; CHERYL HUEY, an individual; GREGORY M. KOZLOWICZ, an individual; MARILYN VALDEZ, an individual; PATRICE CATALLI, an individual; SANDRA RENNEWANZ, an individual; WILLIAM GILBERT, an individual,<br><br>                Plaintiffs,<br><br>vs.<br><br>LENNAR CORPORATION, DOES I-X, and ROE CORPORATIONS I-X, inclusive,<br><br>                Defendants. | Case No.:<br>Dept. No.: |

## COMPLAINT
### (Jury Trial Requested)

Plaintiffs, Julienne Dow, Carol Gerenstein, Cheryl Huey, Gregory M. Kozlowicz, Marilyn Valdez; Patrice Catalli, Sandra Rennewanz, and William Gilbert ("Plaintiffs"), by and through the law firm of Marquis Aurbach Coffing, complains against the Defendant and alleges as follows:

## SUMMARY OF THE COMPLAINT

This is an action under the Age Discrimination in Employment Act ("ADEA") to correct unlawful employment practices on the basis of age and to provide appropriate relief to Julienne Dow, Carol Gerenstein, Cheryl Huey, Gregory M. Kozlowicz, Marilyn Valdez, Patrice Catalli,

Sandra and William Gilbert, "Plaintiffs" collectively for unlawful employment actions related to the Plaintiffs' age. Plaintiffs allege that Defendant, Lennar Corporation. ("Lennar") unlawfully terminated Plaintiffs who are at least 40 years of age and older because of their age.

## THE PARTIES

1. Plaintiff Julienne Dow ("Dow") is and was, at all times relevant hereto, an individual presently residing in the State of Nevada, Las Vegas.

2. Plaintiff Carol Gerenstein ("Gerenstein") is and was, at all times relevant hereto, an individual presently residing in the State of Nevada, Las Vegas.

3. Plaintiff Cheryl Huey ("Huey") is and was, at all times relevant hereto, an individual presently residing in the State of Nevada, Las Vegas.

4. Plaintiff Gregory M. Kozlowicz, ("Kozlowicz") is and was, at all times relevant hereto, an individual presently residing in the State of Nevada, Las Vegas.

5. Plaintiff Marilyn Valdez ("Valdez") is and was, at all times relevant hereto, an individual presently residing in the State of Nevada, Las Vegas.

6. Plaintiff Patrice Catalli ("Catalli") is and was, at all times relevant hereto, an individual presently residing in the State of Nevada, Las Vegas.

7. Plaintiff Sandra Rennewanz ("Rennewanz") is and was, at all times relevant hereto, an individual presently residing in the State of Nevada, Las Vegas.

8. Plaintiff William Gilbert ("Gilbert") was, at all times relevant hereto, an individual residing in the State of Nevada and presently resides in the State of Texas.

9. Lennar Corporation, is and was, at all times relevant hereto, doing business in Clark County, Nevada. As used herein, "Lennar" shall refer to either Lennar Corporation or any company, entity, or division belonging to Lennar, or subsequently belonging to or acquired by Lennar.

10. The true names and capacities of Defendants named herein as DOES I through X, and ROES I through X, inclusive, whether individual, corporate, associate or otherwise, are presently unknown to Plaintiffs who therefore sue said Defendants by such fictitious names; and when the true names and capacities of DOES I through X, and ROES I through X, inclusive are

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

discovered, Plaintiffs will ask leave to amend this Complaint to substitute the true names of said Defendants. Plaintiffs are informed, believe, and therefore allege that Defendants so designated herein are responsible in some manner for the events and occurrences contained in this action.

## JURISDICTION AND VENUE

11. This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, and codified at 29 U.S.C. § 623a et. seq., as well as Nevada Revised Statutes (N.R.S.) 613.330 et. seq.

12. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as this matter invokes a question of federal law.

13. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Nevada.

14. Venue is proper in this district under 28 U.S.C. § 1391(a) because Lennar did business Clark County, Nevada and the complaint of conduct occurred in Clark County.

15. Plaintiffs timely filed this suit following the receipt of their right to sue letters from the Equal Opportunity Commission dated January 27, 2011.

16. The Court should take jurisdiction over the pendent state law causes of action, as they arise from the same common nucleus of operative facts.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

17. Lennar is one of the largest new home builders in the U.S.

18. At all times relevant hereto, Lennar built and sold homes in 17 U.S. states, including the state of Nevada.

19. In 1998, Lennar merged with or acquired Pacific Greystone Corporation ("Greystone").

20. In 2000, Lennar merged with or acquired U.S. Homes Corporation ("U.S. Home").

21. Plaintiffs worked for Lennar or any of its divisions until their termination.

22. On or about December 10, 2007, Lennar terminated all Plaintiffs.

23. Plaintiffs were each over the age of 40 years on December 10, 2007.

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

24. Upon information and belief, Lennar replaced Plaintiffs with employees under the age of 35.

25. Upon information and belief, Lennar replaced Plaintiffs with new home sales consultants who possessed substantially less experience selling new homes.

26. Lennar replaced Plaintiffs with new home sales consultants who were less qualified than Plaintiffs.

## PLAINTIFFS' BIOGRAPHICAL INFORMATION

### 1.  Julienne Dow

27. On or about November 3, 2003, Lennar hired Dow as a new home sales consultant.

28. From November 3, 2003 through December 10, 2007, Dow worked primarily as a new home sales consultant with Lennar and received commissions as compensation based on her number of sales.

29. From November 3, 2003, through December 10, 2007, Dow received health insurance benefits from Lennar.

30. From November 2003 through Spring 2005, Dow received numerous awards due to her "high sales" volume.

31. In 2005, Lennar assigned Dow to a team of three new home sales consultants at a Lennar development called the "Tramonto Village" in Las Vegas, NV.

32. In 2005, Dow's Tramonto Village team had the company's highest new home sales volume, reaching approximately $75,800,000.

33. From November 2003 through December 10, 2007, Dow received several cash awards from Lennar due to her high monthly sales.

34. During or around early August 2006, Lennar assigned Dow to Earlstone Community Homes.

35. During or around early August 2006, there were a total of eight homes left to sell at the Earlstone community.

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

36. From early August 2006 through early September 2006, Dow sold all eight remaining homes at the Earlstone community.

37. During or around early February 2007, Lennar transferred Dow to a community of new homes named "Silver Creek."

38. The homes at Silver Creek where adjacent to a graveyard.

39. The homes at Silver Creek were nearly impossible to sell due to the inflated price, incentives being given at developments with similar floorplans, and the proximity to the graveyard.

40. On or about July 9, 2007, Dow was assigned to a community of homes named the "Cottages at Windmill" in Las Vegas, NV.

41. On or about July 9, 2007, the Cottages at Windmill had 15 homes remaining for sale.

42. From July 9, 2007 through December 8, 2007, Dow sold all 15 remaining homes at the "Cottages at Windmill" community.

43. On December 10, 2007, Lennar terminated Dow's employment.

44. Dow was 66 years old on the date of her termination.

45. Since December 10, 2007, Dow has had difficulty finding permanent employment and has been forced to subsidize her own health insurance benefits.

### 2. Carol Gerenstein

46. On or about July 3, 2006, Lennar hired Gerenstein as a new home sales consultant.

47. From July 3, 2006 through December 10, 2007, Gerenstein worked primarily as a new home sales consultant and received commissions based on her number of sales.

48. From July 3, 2006, through December 10, 2007, Gerenstein received health insurance benefits from Lennar.

49. During or around December 2006, Gerenstein received a cash award for the second highest amount of sales for the months of October 2006 and November 2006.

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

MARQUIS AURBACH COFFING
10001 Park Run Drive
Las Vegas, Nevada 89145
(702) 382-0711 FAX: (702) 382-5816

50. In December 2006 and January 2007, Gerenstein sold a higher amount of new homes than she sold in October 2006 and November 2006.

51. From September 2006 through October 2007, Gerenstein was assigned to a community of new homes named "Lamplight Cottages" in Las Vegas, NV.

52. From September 2006 through October 2007, Gerenstein was part of a team of two new home sales consultants.

53. From September 2006 through October 2007, Gerenstein sold 87 homes in the "Lamplight Cottages" community.

54. During or around early October 2007, Lennar assigned Gerenstein to a community of new homes named "Skyridge" in Las Vegas, NV.

55. In October 2007, Skyridge was a difficult community to sell with only four homes completed and inflated sale prices.

56. From October 2007 through December 2007, Lennar refused Gerenstein's requests to lower the sales pricing of the homes at the Skyridge community.

57. On December 10, 2007, Lennar terminated Gerenstein's employment.

58. Gerenstein was 54 years old at the time of her termination.

59. Since December 10, 2007, Gerenstein has had difficulty finding permanent employment and has been forced to subsidize her own health insurance benefits.

### 3. Cheryl Huey

60. During or around July 1999, Lennar hired Huey as a new home sales consultant.

61. From July 1999 through December 10, 2007, Huey worked as a new home sales consultant and received commissions as compensation based on her number of sales.

62. From July 1999 through December 10, 2007, Huey received health insurance benefits from Lennar.

63. From July 1999 through December 10, 2007, Huey received numerous awards from Lennar based on her performance.

64. During or around 2000, Huey received the 2000 "Top Customer Satisfaction Award" from Lennar.

65. During or around July 2002, Huey received the "Bulldog Award for Outstanding Achievement" from Lennar based on her sales performance.

66. During or around 2005, Huey received the "Top Customer Satisfaction Award" from Lennar for the entire year.

67. During or around early Fall 2007, Lennar transferred Huey to a community of homes named "Bermuda Ranch" in Las Vegas, NV.

68. During or around Fall 2007, Bermuda Ranch was a difficult community of homes to sell because of the inflated sale prices.

69. Despite the prices at Bermuda Ranch, Huey sold 12 of the 18 homes remaining at Bermuda Ranch.

70. During or around December 2007, Lennar transferred Huey to a community of homes named "Fiesta Park" in Las Vegas, Nevada.

71. During or around December 2007, Huey sold the last four remaining homes at Fiesta Park.

72. On or about December 10, 2007, Lennar terminated Huey's employment.

73. Huey was 60 years old at the time of her termination.

74. Since December 10, 2007, Huey has had difficulty finding permanent employment and has been forced to subsidize her own health insurance benefits.

### 4. Gregory M. Kozlowicz

75. On or about May 1, 2000, Lennar hired Kozlowicz as a new home sales consultant.

76. From May 1, 2000 through December 10, 2007, Kozlowicz worked primarily as a new homes sales consultant and received commissions based on his number of sales.

77. From May 1, 2000 through December 10, 2007, Kozlowicz received health insurance benefits from Lennar.

78. During or around December 2000, Kozlowicz received the "Bulldog of the Year" award from Lennar in his division for outstanding achievement and sales.

. . .

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

79. In 2002, Lennar named Kozlowicz the "Sales Person of the Year" in his division based on his high number of sales.

80. In 2003, Lennar named Kozlowicz the "Sales Person of the Year" in his division based on his high number of sales.

81. In 2003 and 2004, Lennar placed Kozlowicz on its sales advisory committee as a reward for his sales.

82. During or around March 2005, Lennar assigned Kozlowicz to open up a new community of homes at "Spanish Ridge" in Las Vegas, NV.

83. From March 2005 through December 2005, Kozlowicz sold and closed every home for sale at Spanish Ridge.

84. During or around January 2006, Lennar assigned Kozlowicz to a community called "Arroyo Canyon" in Las Vegas, NV.

85. From January 2006 through September 2006, Kozlowicz sold 27 new homes in Arroyo Canyon.

86. During or around October 2006, Lennar assigned Kozlowicz to community called "La Cresenta" in Las Vegas, NV.

87. In October 2006, La Cresenta only had two homes remaining left to sell.

88. From October 2006 through November 2006, Kozlowicz sold all of the remaining homes at La Cresenta.

89. In January 2007, Lennar assigned Kozlowicz to a community of new homes named "Skyridge" in Las Vegas, NV.

90. In January 2007, Skyridge was a difficult community to sell due to the inflated sale prices.

91. In February 2007, without any explanation, Michael Campbell ("Campbell") of Lennar relayed to Kozlowicz it was Lennar's goal to fire Kozlowicz or force him to quit before the end of 2007, despite his stellar record with Lennar. Campbell was Lennar's Divisional Sales Manager at the time of the statement.

92. In February 2007, Campbell informed Kozlowicz Campbell would personally see to it that Kozlowicz would be fired.

93. In March 2007, Lennar assigned Kozlowicz to an existing community of homes called "Whitehorse" in Las Vegas, NV.

94. From March 2007 through May 2007, Kozlowicz made approximately 70 percent of the sales at the Whitehorse community.

95. In June of 2007, Lennar sent Kozlowicz to a community named "Canyon Springs" in Las Vegas, NV, which was a difficult community to sell.

96. From June 2007 through November 2007, Kozlowicz made 60 percent of the sales at Canyon Springs.

97. On December 1, 2007, Lennar awarded Kozlowicz with a $1,000 travel certificate based upon his number of sales.

98. On December 10, 2007, Lennar terminated Kozlowicz's employment.

99. Kozlowicz was 58 years old on the day of his termination.

100. Since December 10, 2007, Kozlowicz has had difficulty finding permanent employment and has been forced to subsidize his own health insurance benefits.

### 5. Marilyn Valdez

101. Valdez was hired by Lennar as a new home sales consultant on or about July 28, 1992.

102. Valdez worked for Lennar from 1992 to 2007 as a new home sales consultant and received commissions as compensation for each new home sale.

103. From 1992 through 2007, Valdez received health insurance benefits from Lennar.

104. Valdez received numerous awards from Lennar based on her performance.

105. From Spring 1993 through Spring 2001, Valdez won monthly sales contests on seven separate occasions.

106. From 1992 through 2007, Lennar awarded Valdez the "Salesperson of the Month" approximately 16 times.

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

107. In 1996, Valdez received the "Million Dollar Circle Platinum Award" with the National Sales & Marketing Counsel for outstanding achievement and distinguished service.

108. From 1992 through 2007, Valdez participated in a bonus program with Lennar based on the number of homes she sold or closed each year.

109. From 1992 through 2007, Valdez received a bonus each year because of her high sales volume.

110. From 1998 through December 10, 2007, Valdez received the award for "Outstanding Sales Performance of the Year" from Lennar approximately four times.

111. From July 28, 1992 through December 10, 2007, Valdez received from Lennar, awards of paid trips to the following cities: Napa Valley, CA, Disneyland, CA, San Diego, CA, Lake Tahoe, NV, San Francisco, CA.

112. On or about December 10, 2007, Lennar terminated Valdez's employment.

113. Valdez was 63 years-old at the time of her termination.

114. Since her termination on December 10, 2007, Valdez has had difficulty finding permanent employment and has been forced to subsidize her own health insurance benefits.

### 6. Patrice Catalli

115. On or about September 29, 2006, Lennar hired Catalli as a new homes consultant.

116. From September 29, 2006 until December 2007, Catalli worked primarily for Lennar as a new homes sales consultant and received commissions as compensation for each new home sale.

117. From January 2007 to December 2007, Catalli received a salary of $36,000.00.

118. From 1992 through 2007, Catalli received health insurance benefits from Lennar.

119. During or around March 2007, Lennar assigned Catalli to a community of new homes named the "Willows" located in Las Vegas, NV.

120. From March 2007 through December 2007, Catalli sold approximately 50 homes at the Willows.

121. On December 10, 2007, Lennar terminated Catalli's employment.

122. On December 10, 2007, the date of termination, Catalli was 58 years old.

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

123. Since her termination on December 10, 2007, Catalli has had difficulty finding permanent employment and has been forced to subsidize her own health insurance benefits.

### 7. Sandra Rennewanz

124. On September 20, 2000, Lennar hired Rennewanz as a new home sales consultant.

125. From September 20, 2000 through December 10, 2007, Rennewanz worked as a new home sales consultant with Lennar; Rennewanz received commissions as compensation from Lennar based on her number of sales.

126. From September 20, 2000 through December 10, 2007, Rennewanz received health insurance benefits from Lennar.

127. Rennewanz received numerous awards from Lennar due to her high sales volume.

128. In 2006, Lennar selected Rennewanz to represent Lennar at the "National Advisory Council Top Salesperson & Best of the Best" quarterly conference due to her outstanding performance and sales.

129. From 2000 through 2007, Rennewanz received numerous "WOW" badges or awards from Lennar for her outstanding sales.

130. In Fall 2005, Lennar transferred Rennewanz to a community named "Sterling Glen" in Las Vegas, NV.

131. From 2005 through 2006, Rennewanz sold all of the remaining homes at Sterling Glen.

132. During or around 2006, Lennar transferred Rennewanz to a community of homes named "The Glen" in Las Vegas, NV.

133. During or around 2006, Rennewanz sold all of the remaining homes at The Glen.

134. During or around February 2007, Lennar transferred Rennewanz to a community of homes named "Arbor Ridge" in Las Vegas, NV.

135. Although the Arbor Ridge community of homes was a difficult community of homes to sell, Rennewanz sold all 10 remaining homes at Arbor Ridge in 2007.

136. On December 10, 2007, Lennar terminated Rennewanz's employment.

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

137. Rennewanz was 59 years-old on the date of termination.

138. Since December 10, 2007, Rennewanz has had difficulty finding permanent employment and has been forced to subsidize her own health insurance benefits.

### 8. William Gilbert

139. On or about February 25, 1995, Lennar hired Gilbert as a new home sales consultant.

140. From February 25, 1995 through December 10, 2007, Gilbert worked primarily as a new homes sales consultant and received commissions based on his number of sales.

141. From February 25, 1995 through December 10, 2007, Gilbert received health insurance benefits from Lennar.

142. From February 25, 1995 through December 10, 2007, Gilbert received several awards from Lennar based on his number of sales.

143. During or around Spring 1998, Lennar transferred Gilbert to a community of homes named "Coronado Hills" in Las Vegas, NV.

144. In Spring 1998, Coronado Hills was a difficult community of homes to sell because it is located in a traditionally high-crime neighborhood.

145. From Spring 1998 through 2000, Gilbert personally sold 110 homes at Coronado Hills.

146. During or around December 2006, Gilbert received a cash award for the second highest number of sales for the months of October 2006 and November 2006.

147. During or around November 2007 through December 10, 2007, Lennar transferred Gilbert to a community of homes named "Cambria" in Las Vegas, NV.

148. In the first week of November 2007, Gilbert sold six homes at Cambria.

149. During or around early November 2007, Gilbert was ready to sell six new homes by mail to qualified buyers who had not viewed the model.

150. During or around November 2007, Gilbert requested permission to close on all six homes.

151. During or around November 2007, Lennar refused to give Gilbert permission to sell six homes by mail to qualified buyers.

152. During or around November 2007, Lennar commended a substantially younger employee for his home sales by mail.

153. On December 10, 2007, Lennar terminated Gilbert's employment.

154. Gilbert was 63 years old on the day of his termination.

155. Since December 10, 2007, Gilbert has had difficulty finding permanent employment and has been forced to subsidize his own health insurance benefits.

156. Upon information and belief, each of the Plaintiffs was replaced by an employee under the age of 35 years old.

157. Upon information and belief, each of the Plaintiffs was replaced by an employee with less experience and qualifications as a new home sales consultant.

## HIRING OF YOUNGER REPLACEMENTS AND CHANGES IN CULTURE BY LENNAR

158. From November 2006 through December 2007, Lennar hired approximately 17 new home consultants in Las Vegas, NV (the "Younger Replacements").

159. The Younger Replacements' ages ranged from early 20s to early 30s.

160. Of the Younger Replacements hired by Lennar between November 2006 and December 2007, Lennar did not hire any new home sales consultant over the age of 35 years.

161. The Younger Replacements substantially consisted of attractive, young females.

162. The Younger Replacements generally had little to no prior experience as new home sales consultants.

163. Some of the Younger Replacements were not licensed to sell real estate when they were hired by Lennar.

164. From November 2006 through December 2007, Younger Replacements generally had fewer sales than the Plaintiffs.

165. In 2007, the Younger Replacements failed to produce sales in the top 50 percent of all new home sales consultants.

166. On December 10, 2007, Lennar retained all Younger Replacements despite having lower sales numbers than the Plaintiffs.

### DISCRIMINATORY CONDUCT

167. From January 2004 through December 2007, Lennar subjected Plaintiffs to numerous comments constituting and displaying a pattern of age discrimination.

168. At a conference in Las Vegas, NV during May 2004, Stuart Miller ("Miller"), CEO of Lennar, represented to Kozlowicz and other agents that the company is "moving in a new direction," and that Lennar intended to hire younger, less experiences new home consultants.

169. On or about September 2004, Valdez participated in a sales meeting with Mike DeSilva ("DeSilva"), then Lennar's Division President.

170. During the September 2004 sales meeting, DeSilva asked Valdez, "aren't you ready to retire soon?"

171. On or about September 12, 2006, Lennar held a monthly "Coaches" meeting comprised of new home consultants and management teams from the U.S. Homes and Greystone divisions of Lennar.

172. On or about September 12, 2006, Campbell stood up at the Coaches Meeting and told management and staff that Lennar likes to hire young, inexperienced salespeople, and even targets those with no real estate sales experience, "so we can train them the way we want."

173. On or about September 12, 2006, at the monthly "Coaches" meeting management from Lennar discussed how some of the "older, experienced new home consultants" were reluctant to embrace new programs.

174. In December 2006, Campbell instructed Catalli to train an inexperienced new employee in her early 20s because she represented the "new face of Lennar."

175. In July 2007, Campbell represented to Dow and other agents that "changes were coming" in the way Lennar dealt with and treated its sales force.

176. During or around early September 2006, Campbell and Michelle Loker ("Loker") of Lennar represented to sales agents during a monthly "objective" meeting that the company

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

was moving in a new direction and that the older sales consultants would be replaced by younger, easily trainable new agents (the Younger Replacements).

177. From September 2006 through December 2007, Lennar sales managers repeatedly represented to older sales agents in monthly meetings that the company was moving in a new direction and older sales consultants would be replaced by younger, easily trainable new agents (the Younger Replacements).

178. From September 2006 through December 2007, Lennar sales managers represented to older sales managers that Lennar could go on college campuses and recruit graduates to replace existing new home consultants.

179. During February 2007, Campbell informed Kozlowicz that Lennar wished to fire Kozlowicz or force him to quit by the end of 2007.

180. In October 2007, Lennar sales managers represented to Rennewanz that all sales incentives had been removed from her community and if she tried to write a contract incorporating those incentives, it would be rejected.

181. During or around late Spring 2007, Campbell represented to Catalli that some of the "older" new home consultants at Lennar were "not dressing in the right decade."

182. Upon information and belief, during or around early July 2007, sales managers from Lennar represented to another employee named Dawn Anderson ("Anderson") that Lennar was "looking get rid of some of the old folks."

## REASSIGNMENT OF OLDER EMPLOYEES

183. During or around January 2007 through December 2007, Lennar began transferring its older new home consultants, including many of the Plaintiffs, from attractive, productive locations to less desirable communities, while assigning more desirable communities where sales could more easily be obtained to the Younger Replacements. Lennar made these reassignments in an effort to force Plaintiffs to quit or resign from Lennar.

184. During or around January 2007 through December 2007, Lennar transferred its older, more experienced employees to communities in high crime areas where it was difficult to sell homes in an effort to force Plaintiffs to quit or resign from Lennar.

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

185. Prior to December 10, 2007, Lennar transferred Plaintiffs to remote communities in an effort to force Plaintiffs to quit or resign from Lennar.

186. From 2006 through 2007, Lennar refused to lower inflated sale prices at communities where Plaintiffs were selling in an effort to prevent Plaintiffs from making sales and therefore forcing Plaintiffs to quit or resign from Lennar.

### TREATMENT OF YOUNGER REPLACEMENTS

187. Lennar transferred the Younger Replacements to prime, easy to sell communities in an effort to boost the sales of the Younger Replacements and in an effort to force Plaintiffs to quit or resign from Lennar.

188. From November 2006 through December 2007, Lennar lowered home prices for the Younger Replacements to encourage and facilitate better sales by the Younger Replacements while refusing to lower home prices at communities where Plaintiffs were assigned.

### EVENTS PRIOR TO TERMINATION

189. On or about December 8, 2007, Plaintiffs were locked out of Lennar's internal payroll system.

190. On or about December 8, 2007, Kozlowicz telephoned Jeremy Parness ("Parness") of Lennar and was informed that he and all Plaintiffs had been or would be terminated on December 10, 2007.

191. On December 8, 2007, Parness emailed Plaintiffs requesting they appear at a meeting on December 10, 2007 to discuss the termination.

192. On December 8, 2007, Roger Seaholm ("Seaholm") of Lennar telephoned all Plaintiffs to inform them they would all be terminated on Monday, December 10, 2007.

193. On December 10, 2007, Plaintiffs attended a meeting at the Lennar division office in Las Vegas, NV.

194. During the meeting, Parness represented to Plaintiffs that Lennar had selected 20 new home consultants to be terminated.

195. During the meeting, Parness represented that the decision to terminate all 20 sales consultants was entirely "subjective and had nothing to do with performance."

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

### PROFILE OF EMPLOYEES RETAINED OR HIRED AFTER TERMINATION

196. On December 10, 2007, Lennar terminated the employment of 20 new home consultants, including all Plaintiffs.

197. Of the 20 new home consultants terminated, 16 consultants, including all Plaintiffs, were over the age of 40.

198. From November 2006 through December 2007, Lennar hired the Younger Replacements, who were each under the age of 35.

199. All of the Younger Replacements were retained on December 10, 2007.

200. From January 2007 through December 2007, all of the Younger Replacements had lower sales productivity than the Plaintiffs.

### EVENTS AFTER TERMINATION

201. From December 2007 through March 2008, Plaintiffs filed individual age discrimination charges and applications with the U.S. Equal Employment Opportunity Commission.

202. Since the termination, by and large each of the Plaintiffs has had difficulty finding employment.

### FIRST CLAIM FOR RELIEF
### 29 U.S.C. § 621 et seq.
### (AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967 (ADEA))

203. Plaintiffs reallege and incorporate by this reference each and every allegation contained above, inclusive, as if fully set forth herein.

204. Plaintiffs, and each of them, timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) against Lennar alleging age discrimination.

205. Plaintiffs are all members of a protected class to wit: over the age of 40.

206. Prior to December 10, 2007, Plaintiffs performed their jobs in a satisfactorily manner and/or exceeded expectations.

207. Plaintiffs were each at least 40 years old on the date of termination.

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

208. On December 10, 2007, Lennar terminated Plaintiffs' employment, thereby subjecting Plaintiffs to an adverse employment action.

209. Prior to and in the days and months after December 10, 2007, Lennar replaced Plaintiffs with substantially younger employees with equal or inferior qualifications.

210. Plaintiffs have each been damaged in excess of $75,000, exclusive of interest and costs, in an amount to be determined at trial as the direct and proximate cause of Lennar's violation of the ADEA.

211. Additionally, the age discrimination which Plaintiffs suffered at the hands of Lennar was malicious, fraudulent, and/or oppressive, warranting an award of punitive damages.

212. Plaintiffs have been forced to retain the services of an attorney to prosecute this matter and are entitled to recover reasonable costs and attorney fees incurred herein as special damages.

### SECOND CLAIM FOR RELIEF
### (VIOLATION OF NRS 613.330)

213. Plaintiffs reallege and incorporate by this reference each and every allegation contained above, inclusive, as if fully set forth herein.

214. Plaintiffs are members of a protected class to wit: each was, at the time of termination, over the age of 40 years old.

215. Lennar terminated Plaintiffs' employment based on their age, in violation of NRS 613.330.

216. Plaintiffs have each been damaged in excess of $75,000, exclusive of interest and costs, in an amount to be determined at trial, as the direct and proximate cause of Lennar's violation of NRS 613.330.

217. Additionally, the age discrimination which Plaintiffs suffered at the hands of Lennar was malicious, fraudulent, and/or oppressive, warranting an award of punitive damages.

218. Plaintiffs have been forced to retain the services of an attorney to prosecute this matter and are entitled to recover reasonable costs and attorney fees incurred herein as special damages.

M&A:12090-001 1319819_4.DOC 4/27/2011 5:02 PM

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs, pray for judgment as follows:

1. For damages in excess of $75,000, exclusive of interest and costs;

2. For reasonable attorney fees, plus interest and costs incurred herein as special damages;

3. For punitive damages; and

4. For such other and further relief as this Court may deem just and proper.

Dated this 27th day of April, 2011.

MARQUIS AURBACH COFFING

By /s/ Jay Young
Jay Young, Esq.
Nevada Bar No. 5562
Nick D. Crosby, Esq.
Nevada Bar No. 8996
Brian Blankenship, Esq.
Nevada Bar No. 11522
10001 Park Run Drive
Las Vegas, Nevada 89145
Attorney(s) for Plaintiffs

≈JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Julienne Dow, et al.

**(b)** County of Residence of First Listed Plaintiff: **Nevada**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jay Young, Esq., Marquis Aurbach Coffing, 10001 Park Run Drive
Las Vegas, Nevada 89145

## DEFENDANTS
Lennar Corporation

County of Residence of First Listed Defendant: **Nevada**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)
Unknown at this time.

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | **PERSONAL PROPERTY** | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 370 Other Fraud | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☒ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
29 U.S.C. Section 621 et seq.
Brief description of cause:
Age discrimination.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____   DOCKET NUMBER _____

DATE: 4.27.11

SIGNATURE OF ATTORNEY OF RECORD: /s/ Jay Young

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____